My name is Molly Steele, and I'm here on behalf of IDS Lenius Allegro, whom I will call Allegro Airlines for all our benefit. Thank you. I would like to speak for 15 minutes and reserve 5 minutes for rebuttal. And please do feel free to ask me questions because I well imagine that you have a number of them. Okay, I'd like to cover three points. In the course of your argument, counsel, tell me what you think this court has to decide. It seems to me like you've got an entirely different situation now, and a lot of this has to go back and be decided by the district court. Tell me, in the course of your argument, what issues do you think we have to decide now? I think you would have to tell the district court that he abused his discretion by entering the contempt orders that he did because he did not fully consider Mexican law. And it does seem to me that Pegasus has pretty much conceded that there should be a full and fair hearing on Mexican law. If that is the case, of course, we will be able to get into the record without question the fact that the Federal Labor Board has, in fact, told Allegro they cannot return the planes. But on this record, I believe that in order to send it back to the district court, you would have to find that he had abused his discretion by failing to fully and adequately consider Mexican law. We can do that and leave the damages or sanctions from now on out, if any, to the district court. Well, actually, we would prefer that you find that Mexican law is clear and that you can – it's a pure question of law. As I'm sure this Court knows, under Rule 44.1, foreign law is a pure question of law to be considered de novo by this Court. And you can consider Mexican law from any source, and it's not limited even to what the parties provide you. You can go out and do your own research. And, of course, Judge Martone has ruled clearly and unequivocally that Mexican law is not what Allegro says it is. So he clearly thought he had enough information to rule, and he ruled on that actually seven times at the September 19th hearing and several times since. So we would submit that there may not be a need to have an evidentiary hearing, but if you're – if this Court deems that a – so much has changed, I mean, you know, there's no way we've been able – anyway, we submit that the evidence does show and will show that there's no way Allegro could have returned the planes given what Mexican law is. Counsel, there was a motion to purge contempt filed with the court. Yes, Your Honor. Yes, Your Honor. Was any thought given to perhaps filing that in the district court? We gave it considerable thought. And our research showed that the district court did not have jurisdiction to consider it, Your Honor. But if you do send this back to the district court for a full new hearing on Mexican law, we would hope that that – I think it's clear from the record that that is not res judicata and we're not blocked from bringing a motion to purge in the district court. But I would request strenuously, Your Honors, that if you do decide to remand this to district court, that you please tell Judge Martone that he should not prejudge the issue. We have a problem in that, as I'm sure you are aware, in his November 5 order denying the stay, even though he says this Court cannot find that Pegasus has any likelihood of success on the merits. And then on January 16th, he says, I don't have jurisdiction to decide the motion to amend. To vacate. I don't have jurisdiction. But if I did have jurisdiction, I would deny it. That's prejudging the issues that are not yet before him, and we respectfully request that some indication of Mexican law be given to him so that Allegro can have a full and fair hearing before the district court, or perhaps it be remanded to a different district court if that is possible. You're asking us to give the district court judge our view of what Mexican law is on this issue? Yes, Your Honor. Do you want to know why? Yes. That would be helpful. The reason why is because the issue of Mexican law is considered totally de novo at this stage, at the appellate court level. It's a pure question of law considered de novo. If it gets here properly. In other words, things come to us from the district court. We don't just reach out and grab them. Right. So if the issues are presented to the district court and properly appealed, then we can consider them. But the fact that it's a de novo issue doesn't mean we can grab it on that basis alone. Oh, right. But Mexican law, excuse me, you're right, you have to do it on the record. But you can also, interestingly enough, on the question of foreign law, you are not limited to what was before the district court. It's a very unusual situation. This appellate court can actually do its own research into foreign law and make its own determination if it wishes. Counsel, normally isn't foreign law developed in the district court by the use of experts in that law? Yes, Your Honor. And of course, those expert opinions are before the district court in this case, and they are part of the record. So that's what you're asking us to look at, the relative expert opinions that were before the district court? I'm also asking the court to look at the statutes, the Mexican law statutes, because those are acts of state. Yes, Your Honor. And those were before the district court on the motion to vacate. Now, Pegasus will say that they were not part of the record on appeal. But in cases involving contempt, this court is not necessarily limited by what was before the district court. If I may pull my case. In Richmark Corporation v. Timber Falling Consultants, even though the issues were not raised before the district court, this court said that the propriety of contempt can be attacked on appeal and it's not waived, even though it's raised for the first time on appeal. Well, but that's a little different issue than asking us to go outside the record of what's admitted in the district court to determine a question on appeal. Yes, Your Honor. That is a different question. But the cases do say that you can perform your own independent research into foreign law because it is a pure question of law. And what's your best case authority for the proposition that the court of appeals can conduct independent research into foreign law? It's the Pasquin case, Your Honor, cited in our brief. And I believe there are others as well, Your Honor. What was the name of the case again? Pasquin, I believe, is the name of the case. C-O-I-N. All right. Certainly. Also, we have filed affidavits of Mexican lawyers, Mexican labor lawyers, and Pegasus has filed a declaration of Carlos Sierra that in the second appeal they have made it a part of the record, and we have made the decision of the Mexican Labor Board part of the record. That's part of the record below? In the second appeal, yes, Your Honor. It was not stricken from our brief. And it is... When you say it's part of the record, it was attached to a brief? It was filed... It's part of the record... It's part of the record excerpts on the second appeal. At what point in the proceedings was it submitted? In response to Pegasus' motion to clarify. Right. In the second appeal. So it was filed before the district court. Did the district court order it admitted? The district court considered it. I don't think it was a question of being admitted or not admitted. But the district court referred to it. Yes. In two separate places on November the 5th. Okay. And, yes. This court can also, in addition, if you choose not to remand to the district court for a full and fair hearing on Mexican law, you could also determine if you think that Mexican law is just too complicated and the interplay between the Mexican Labor Board and the Mexican Bankruptcy Court, both of which are federal entities, you can sua sponte grant comity to the Mexican legal system. And I would... I urge that that be done in this case. Because whether Section 921 applies to lease assets is a question for the Mexican legal system to determine more appropriately than a United States court. I would also like to briefly speak to the second appeal, the order on the second appeal and whether he had jurisdiction to change the contempt to make Pegasus the recipient. We submit that it was indeed an alteration, a change of the two earlier orders that he lost jurisdiction to do. He clearly changed the wording. He had... Pegasus had asked on three separate occasions that it be made the recipient of the fines. And on each occasion, Judge Martone ruled that the money would go to the clerk of the court. That was a very clear decision that he made on more than one occasion. Then in January, they filed their motion for, quote, clarification. Oh, excuse me. Let me back up. On January the 16th, when Pegasus filed its motion to amend the order to make the fines directly payable to Pegasus, he ruled that he lacked jurisdiction to amend the order and that he could not decide it. But five days later, on their motion to, quote, clarify, he says, I don't lack jurisdiction. I'm just giving my intent from the earlier one. But his last sentence is a clear change. He says it's further order that the clerk of the court shall disburse to Pegasus the funds being held on its behalf in this action. That clearly changed what happened to this money. More than a million dollars went to Pegasus. They've been earning interest on it for two years. That January 21st order is void because he didn't have jurisdiction to enter it. And Pegasus should be ordered to return the money and pay it back with interest. Going back to the October 3 and October 10 orders, the contempt order was void because Pegasus never put on any actual evidence of its daily losses. And by actual evidence, I mean real testimony and true evidence. They said, we have a witness here. But they never put the witness on. And so they never made a proper offer of proof. They said, oh, but the planes are worth $150 million. That doesn't show what the actual losses were per day. Nowhere in this record is there testimony of the actual losses per day. They are going to say, but the judge said, I don't think you've controverted that $250,000 a day, have you? And at first, Jeffrey Kirksmer did say, no, Your Honor. But then he went on to say, we would suggest. We did provide evidence in the September 19th brief that it was not nearly that amount without quantifying it. But I'm not going to rehash that. The evidence is still before the Court. And so ---- It's pretty close to saying, I don't controvert that issue. I think he said, I don't controvert. Oh, yes, I do controvert. I think he really did, Your Honor, because he referred to the evidence at the last hearing, and that evidence did show that the C-checks actually added to the value of the planes and that Allegro was actually making them more valuable by doing the C-checks. And therefore, plus, he also went on to controvert the amount by saying it shouldn't be calculated on a daily basis because it wasn't yet liquidated. And on both those scores, I think the evidence does show that he continued and maintained his objections to the $250,000 per day. But in addition, if these were coercive contempt fines, judge did not consider any of the factors under mine workers that he was required to consider. He never considered Allegro's financial resources. He never considered the serious of the financial burden on Allegro. And he never considered whether fines of $250,000 a day would be effective, Your Honors. And we submit that at $250,000 a day, those fines have now become criminal because the propriety and nature of contempt can change over time. And in the next two minutes, I'm going to discuss the foreign state compulsion defense. This is the, under the restatement third, in general, a state may not require a person to do an act in another state that is prohibited by the law of that state. I admit I have to explain Mexican labor law very quickly, but it is done in two phases. There is the pre-strike phase and the strike phase. It is very different from American law. Where was this raised before the district court? At what point in the proceedings? Oh, it was raised seven times at September 19th hearing. It was raised seven times. Excuse me. I've got all the different ways that it was raised, and I can give, Your Honor, the page numbers if you would like. It was raised in response to the Rule 70 motion seven times, explaining Mexican labor law. And then in the Tellez-Heron. That's where I can find it. Yes, Your Honor. ER 85-89. The foreign compulsion argument was raised there, too? Yes, Your Honor. May I read you what was said? Yes. Yes. The existence of the labor dispute involves significant issues of comedy and serious sanctions under Mexican law, potentially even criminal sanctions, if Allegro were to return the equipment in defiance of the Mexican labor board. The dictates of Mexican labor law render performance impossible. That's page 85. Until the labor issue is resolved, Allegro must hold the equipment in trust for the employees. Now, did they use – I don't mean to tell Your Honor that they used the words compulsion, state defense, but the whole substance was raised from September 19th onward. And I'd like to reserve the remainder of my time. Thank you, counsel. May it please the Court. I'm Susan Freeman, and I'm appearing here on behalf of Pegasus. Let me go first to the specific questions of the Court. What does the Court have to decide now? I believe that the Court needs to decide that on the record before the district court, at the point in time that the district court entered its contempt orders in October of 2003, it did not abuse its discretion. Those contempt orders were proper and appropriate. If, in fact – and further, that the clarification of those contempt orders that was entered later was within the Court's jurisdiction. I believe that the Court – that the Court can then remand back to the district court, and Allegro can bring a Rule 60 motion or a motion to purge, and can show new facts, what happened after October of 2003. And the Court can then – the district court can determine what the Mexican law is, both as a matter of fact and law. This is at different points in time and can determine whether, in fact, Allegro did all that it could to return the planes to Pegasus. I mean, Pegasus strongly believes that certainly up until the point in time that a federal labor board actually entered an order, that Allegro could have returned the planes. It certainly believes that Allegro could have done a lot, even at that point in time, to have returned the planes. At the point in time a bankruptcy was filed, you have something different. Yes. I don't remember. Did the labor board order the operations to continue? Your Honor, there is no evidence in the record of that at all. None. None. I mean, what we have – and we certainly have no contested evidence. And as this Court knows, in Singleton v. Wolf, the United States Supreme Court says you can't decide when we don't have an opportunity to present the facts and the law at the district court level. The appeal really needs to be dismissed if you're going to be trying to decide the merits of Mexican law. This is very much an issue of fact and law. We don't – we disagree with their interpretation of what the labor board did. And we will present that to the district court and we will show that, in fact, Allegro made some arguments, didn't make others, certainly could have come in and said, the Mexican Supreme Court says that the statute is unconstitutional and I have the right to return these planes. Could have said that. Didn't. Didn't make all of the arguments that it could. Didn't do everything reasonably within its power to comply with the judgment of the district court. But that's all to be decided if and when they bring a Rule 60 motion or a motion to purge contempt at the district court after this Court remands. And then we can deal with the issue of what happened at the labor board and what the union did and what happened in bankruptcy court and what could have been done and what was done and, you know, why they didn't try to deregister the planes as the court ordered and so forth. What record evidence supports the $250,000 per day? We have a brief that says it's $250,000 a day. We have an offer of proof saying my witnesses are here in court and willing to testify and able to testify as to the amount of damages that are set forth in our brief. It did not come to the point of actually burdening the court with the time of introducing testimony because the court said to the lawyer there for Allegro, do you contest? You don't contest the $250,000 a day, do you? And he said, no, Your Honor. So the court did not then turn and say, all right, you know, put on your witnesses. We have affidavits as to the value of the aircraft. We have a brief that says it's $250,000 and we have a statement that I have witnesses who are here ready and willing to present that evidence. Why is that in the record counsel that the attorney for Allegro conceded $250,000 a day was the correct amount? He said, no, Your Honor. ER-148. He was asked. He didn't contest it. He says, no, Your Honor. He said, I refer the court back to the September 19th brief that we filed. And in that brief there was an affidavit from one technical person saying we are doing C-checks and those help to preserve value. It says nothing about the fact of not getting monthly rent, of not having the planes turned over and about the deterioration in the value of the aircraft. It didn't deal with any of that. And it didn't really contest the $250,000 a day in damages. And as a result, what you have is no contest. And then you have the district court saying, I don't believe there's any dispute as to the $250,000 a day. And Allegro has not been contested. I'm at page 148 of the record. Show me the language that you're relying upon for your assertion that the $250,000 a day was conceded. I'm sorry, Your Honor, it's page 147. I apologize. The court, one way to do that is to require them to disgorge the gains on lines 7 and 8. I don't think you've controverted that $250,000 a day, do you, Mr. Kirksmar? No, Your Honor. ER 147? Yes, ER 147. Is this case number 041522? No, I'm sorry, Your Honor, it's in the first one, the 03. It's in that record. If you'd like, I could hand up that page. All right. Okay. Your Honor, we would certainly contest any request that this Court go out and do its own research with respect to Mexican law, in part because we do have a serious contest as to what Mexican law is and what the Mexican Supreme Court has said about the particular statutes that they've relied on. But second, this is very much a question of the application of statutes and court rulings to facts, and we don't have those facts. And we don't have really the opportunity to present them. I have no practicing lawyer memory that says that proof of foreign law is an issue of fact. I wholeheartedly agree, Your Honor, and it should be presented at the district court. Any issue of fact, you can have judicial notice that applies to certain things that come into the decision, but I always thought you proved it as a question of fact. It should be a question of fact and it should be the subject of expert evidence. The only evidence in this record with respect to it is some statements with respect to Mexican law and an affidavit that was filed by Allegro in Virginia court proceedings with respect to garnishment that was then attached to the objection by Allegro to Pegasus' motion to clarify, where the only issue was the court's jurisdiction and not what happened in Mexico and what was happening in Mexico. And there was no opportunity then to controvert that, and it was not really an issue for the district court to decide. The district court wasn't asked to and did not go back and reconsider what was Mexican law. Instead, it just decided whether it had jurisdiction to clarify its order and say that, in fact, its intent was that the ultimate beneficiary of the fines was to be Pegasus. It didn't change a word of the contempt order. It just issued a clarifying order that said, you know, I've originally said that there are damages of $250,000 a day, and that was based upon damage to Pegasus, not damage to the district court. And the original contempt order had said that Pegasus is invited to go get writs of garnishment or attachment or execution. It's inviting Pegasus to do that. Counsel, what's your response? And it says that that was its ultimate intent. What's your response to opposing counsel's citation to the Ninth Circuit case, Pat Zohan, I don't know how to pronounce it, for the assertion that this court can independently ascertain Mexican law? Your Honor, I don't believe that that is a citation in any of these briefs. Maybe it is. It's not a brief. I confirmed it. Okay. I thought that was part of the motion to purge the contempt. Your Honor, I would respectfully refer the court back to Richmark and Rylander decisions of the U.S. Supreme Court at this court that say that that is to be decided at the district court. The contempt can certainly be addressed again later on. They can come in now and say that Mexican law and events that have happened in Mexico means that it is now impossible for me to perform. It's not waived in the sense that once you've had your chance, you can never present it again. But it's waived for purposes of this appeal because it was not argued at the district court. And as the courts in Richland and Rylander explain, you have to do it on the basis of the evidence in the district court. And if they didn't present evidence in the district court about the act of state doctrine and the arguments that they are raising here, then it is waived for this appeal. After there's a remand, the court can then consider it anew on evidence that is presented and on a record that is presented. A party comes before a court for a motion for clarification of an existing order, and the court grants it and said, I'm going to clarify it. Do we give the court decision that it has jurisdiction to clarify as opposed to get into a substantively any deference, or do we look at it de novo as to whether or not the court actually is clarifying versus amending? I think that's a matter of the court's discretion. It's a question of whether the court abused its discretion. The question of whether it had jurisdiction to do it, I believe, is a question de novo. That would be a legal question. But that depends on whether it's amending or clarifying. Well, I guess not entirely, Your Honor, because this Court has already ruled that if, in fact, you have a contempt order and that contempt order has not been stayed pending appeal, that the court can issue orders in aid of execution, even if it modifies the original order. So you have the right to go forward, and even if you need to modify it, you can issue orders in aid of execution when there's been a stay pending appeal. So that's one basis for doing it. And the second basis is that there's no change at all in the original order. It's just clarifying who the ultimate beneficiary will be. And even saying that, you know, this was my intended ultimate beneficiary. Some of the money is now sitting there, so I'm going to allow it to go ahead and be transferred over to Pegasus and out of the court's registry. Additional money that comes in still has to come into the registry. It's still for the ultimate benefit of Pegasus and can be transferred to Pegasus down the line later on. That's just clarifying his original order that, yes, this is a civil contempt order. It's both compensatory and coercive. And the intent of the compensatory aspect of it was that the money ultimately go to Pegasus, the one that had actually suffered this injury. With respect to the initial arguments about the Act of State doctrine, Your Honor, we would say that that was not raised below. To the extent that there's anything in the briefs with respect to impossibility, present impossibility, and foreign coercion, Act of State was not specifically mentioned at all. The argument in its entirety clarified that all the Allegro parties were asking for was a determination of what was commercially reasonable. And that was further clarified at the oral argument, where counsel for Allegro said, I'm not saying that the foreign law prevent enforcement of this court's order. It expressly said, I'm not suggesting that the final judgment is blocked by enforcement of another country's laws. All I'm asking is that the court interpret commercially reasonable, in terms of how long it would take to return this, to be an indefinite period of time. And counsel for Allegro said, if, in fact, the court determines that its meaning of commercially reasonable and its judgment is not ambiguous, then all this evidence of foreign law is irrelevant. He conceded it's irrelevant, except for the purpose of what the meaning of commercially reasonable is. And if that's unambiguous, then he says it's irrelevant. What we have is a court order that says, turn over these aircraft, begin doing it immediately, do not use the aircraft for any commercial gain of revenue for any commercial gain of revenue, or commercially feasible. Allegro says, oh, that's an open-ended, indefinite period of time because of a pre-strike notice that has been in place, or that has been given in Mexico. Judge Martone said, whatever might happen in Mexico, and I'm not ruling now on the extraterritorial effect of this judgment, you are a foreign entity that has come into U.S. courts, taken advantage of U.S. laws, you filed this suit. I mean, Allegro was the plaintiff here. You stipulated to this judgment. You have to abide by this judgment. And at least with respect to assets that are in the United States, I, a federal court, can rule on the effect of my judgment and require you to comply with the judgment while you're in the United States and while you have assets in the United States. And he said, I'm not ruling on the effect down in Mexico, but you do have assets here, and you can turn them over. You have bank accounts here. You have aircraft that are here. And the meaning of a federal court order is appropriately enforced by contempt in the federal court when there's no excuse that's given. And they had no excuse. You know? No, we don't have anything to say as to why we have not complied with this order. We think that in fact, under Mexican law, we have difficulties in doing so, but he really gave no justification for not having complied. He said that this is... What's your response to opposing counsel's request that we suggest to the district court judge to keep an open mind? I don't think that that's needed, Your Honor. Judge Martone is an excellent judge. He was an Arizona Supreme Court judge before he became a district court judge. He certainly knows his role as a judge, and that is to rule on the facts and the evidence that are presented to him. And when he is presented with evidence, when he is presented with evidence as to what happened in Mexico and Mexican foreign law experts on each side, I'm sure he will rule open-mindedly on the facts and the law that is presented to him. He hasn't had that yet. What he has is somebody that comes in, stipulates to a judgment before him, then comes in on a Rule 70 motion and says, I want... I can return it. I stipulate that I can return it, and I have begun returning these planes, and here's my schedule for when I want to return it. And no, you know, I'm not saying that Mexico... Mexican law is preventing me from returning it, but then doesn't. Doesn't do anything. The district court says, you know, you said that you want to return it over the December under your schedule. I think commercially feasible in my order means, you know, don't turn the planes around in midair, but don't continue using them to generate revenue, as my order says, and return them now, and I'll give you a week to return them, and that's commercially reasonable. And then they didn't. They flat out didn't comply with the federal court order. And understandably, Judge Martone didn't like that and said, all right, you know, what are the damages here? Pegasus says it's $250,000 a day. Do you contest that? No, Your Honor. Is there a reason why you haven't returned it? Or what's the status? What have you done? Well, it's only the status that we said, that Pegasus seized three aircraft that were in the U.S., and we haven't done anything more to turn it over. You know, it's not surprising that on that, he had discretion, and he exercised his discretion to say, you're in contempt of court. Now, when you come back in and give him the evidence, and give him the evidence on both sides, I have no reason to doubt, and this Court has no basis on this record to doubt, that he will exercise good and sound judgment and rule on the merits. If he doesn't, they can take it up on appeal and show that to you. But I have no reason to think he would not do that. Is there any reason why we need to remand this case to Judge Martone? I mean, once we're through with it, it's back in his court to the extent it's here anyway. Absolutely. The mandate comes down. And after the mandate comes down, then Allegro can come in and show that, yes, it was unable to comply as of this date, or it really did its best to comply and was precluded as of that date. And, you know, we will come in and say, yes, we now have all 14 aircraft, but Allegro did not do its best to comply, and this is what it could have done, and this is what it didn't do. And we think Allegro was able to do it up to this point in time, and it did not do so. And all of that evidence will be presented, and the Mexican law as to what could have been done when will be presented. And then the district court can rule. Does the Court have any other questions? It appears not. Thank you, counsel. Thank you. Your Honors, we cannot file a Rule 60b motion because more than a year has elapsed since June 3, 2003, nor can we file a Rule 60b motion under the October 2003 order because more than a year has elapsed. Okay.   It's either a question of fact or law. When I started practicing law, it was unquestionably a question of fact. And we always ask the Court to take judicial notice. It's turned into a question of law. I believe it was 10 years ago when the rules changed. It is undoubtedly now a pure question of law. That is just a change. That was an old practicing lawyer memory. Exactly. Exactly. I mean, I promise it really has changed. Anyway. And we clearly did raise Mexican law. And I can give you the page numbers in our Rule 70 response. But it was raised over and over and over that Mexican law. Counsel, opposing counsel's argument is not that it wasn't discussed. It was that it was raised in the context of determining what's commercially feasible and not a separate articulated defense in and of itself. It was argued as a separate defense in and of itself when you read the Rule 70 motion at pages 85 through 89. It was also raised separately by Mr. Telez-Giron in his declaration. He said, Mexican labor law will not allow us to give up the planes. And I believe there was also a question about why ALEGRO kept on operating. That's also required by Mexican labor law. Mexican labor law really is truly different from American labor law. And that's why it's so difficult. I think that's why it was so difficult for the judge to really believe that that could possibly be the law. Because once a strike takes effect, of course, the union takes over the entire premises. As a matter of curiosity, on your Rule 60B statement that more than a year has gone by, so it would not be timely, doesn't the fact that the case has been on appeal and the district court lost jurisdiction during that period of time have some effect on the year? I don't believe so, Your Honor. I believe that. Oh, gosh. I think there's some law about filing permission. Isn't there some law about filing permission to proceed with a Rule 60B motion or something like that? But I am not sufficiently knowledgeable. I know that we thought about it and could not. And also, my client could not afford to file the 60B motion that we had prepared, because it's in bankruptcy and there's no way they could afford to bring another extremely expensive 60B motion, even during the time period. Excuse me. There was also a question. The active State doctrine and the foreign compulsion defense were raised before the district court and all that is explained in our brief and you'll see the page numbers and you really will see that. But Pegasus claims that federal statutes in Mexico are not acts of State. Federal statutes are clearly and unquestionably acts of State. And here, and also the decree of the highest labor tribunal in Mexico is an act of State. Counsel, can a private party raise the act of State defense? Yes, Your Honor, it certainly can. And there are cases on that. It happens quite frequently. Now, whether the court agrees that that is, that that particular act of State rises to the level that deference should be given to it is another question. But clearly, private parties can raise acts of State. And that's where most of the cases involving the act of State doctrine arise. But basically... People who are non-government officials. Yes, indeed. Yes. U.S. courts should not interfere with the official acts of a foreign sovereign within its own territory. And there's something else I need to make very clear and this is very important. We are not appealing from the September 19th order after which three planes in the United States were seized. We are complaining about the nine planes that remain in Mexico. Counsel, your time has expired. If you could wrap up in the next 30 seconds or so. Yes, Your Honor. We think that there was an abuse of discretion in granting these contempt orders and that they should be set aside. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. The next case on calendar, Ramsdale v. Lenscrafters, has been submitted on the briefs. The final case on calendar for argument is Fireman's Insurance v. McKeeding. Could you give me those rule books? The rule books, they're supposed to be up here. Just a second. Thank you. Good morning, Your Honors. Good morning. May it please the court, my name is Stan Gibson and it's my privilege to represent the appellant Fireman's Insurance Company of Newark in this matter. I would like to reserve five minutes for rebuttal. This appeal presents a basic legal question  And the basic legal question is is the owner, the identity of an owner of a vessel in an application requested an application for reinsurance is the identity of the owner a material fact?
judges: Reavley , T.G. Nelson, Rawlinson